UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTINE ADAMOW,

        Plaintiff,

    v.                                Case No. C-1-05-104

MIAMI UNIVERSITY, et al.,

        Defendants.

## ORDER

This matter is before the Court on motions for summary judgment filed by defendants Roger Jenkins, Thomas Speh and Ronald Crutcher (doc. 21) and by defendant Miami University ("Miami") (doc. 22). Plaintiff Christine Adamow opposes the motions. Doc. 28. The parties have filed proposed findings of fact and conclusions of law, which the opposing side has marked as true, false or irrelevant. Docs. 25, 26, 39. The Court heard oral arguments on the motions on September 19, 2007.

### I. Facts

Plaintiff began working for Miami University on July 14, 2003. She was hired to serve as the Director of the Page Center for Entrepreneurship at the Business College ("Page Center) and to occupy a one-quarter time position as Visiting Instructor of Marketing. The Page Center is a program offered to students in Miami's School of Business that aims to develop entrepreneurial abilities through classroom experience, study with business-practicing faculty, and interaction with business owners. The Page Center is comprised of three to four faculty members, a director, and a staff person.

1

Dr. Speh, who at the time was the Associate Dean of the School of Business, led the search for the Page Center Director. Plaintiff was offered the position by letter dated May 21, 2003, from Dr. Crutcher, who was Miami's Provost and Executive Vice-President for Academic Affairs during plaintiff's employment with Miami. She accepted the offer on May 27, 2003, by signing and returning the letter to Dr. Crutcher. Following the hiring of plaintiff for the position, Dr. Speh was her immediate supervisor. Dean Jenkins was plaintiff's ultimate supervisor.

The terms of plaintiff's employment are set out in the letter from Dr. Crutcher to plaintiff. See Crutcher Aff., ¶ 1. The terms provide, in pertinent part, as follows:

- Plaintiff would receive an 11-month, limited term unclassified appointment as the Director of the Page Center.

- She would also hold a nine-month, non-tenurable instructional staff position.

- She would receive a specific salary for each of the two positions and other benefits.

- Her appointment could be terminated during its term for cause.

- Re-appointment to either or both positions was at the will of Miami.

- The letter and a letter from Dr. Speh to plaintiff dated May 16, 2003, contained all of the terms of Miami's offer of employment.

On October 8, 2003, Dr. Speh wrote and delivered a memorandum to plaintiff that instructed her to prepare and deliver a timetable for the development of a strategic plan for the Page Center to him within three days and to stop certain comments she was making. Dr. Speh issued a second memorandum to plaintiff that month regarding alleged problems with "relationship management" and team building. Dr. Speh and Dr. Jenkins subsequently met with plaintiff in December of 2003 and advised her that neither would recommend that her appointment be renewed for the following academic year. Dr. Jenkins and Dr. Speh

recommended to Dr. Crutcher that he not issue an appointment letter to plaintiff for the 2004-05 academic year. Dr. Crutcher accepted the recommendation and by letter dated January 27, 2004, he advised plaintiff that her appointment would not be renewed after its June 30, 2004 expiration. Plaintiff filed a discrimination charge based on defendants' action with the Equal Employment Opportunity Commission (EEOC) in June of 2004.

In March of 2005, Miami posted an announcement for a newly-created position of Director of the Miami Center for Innovation and Commercialization (MCIC). Plaintiff submitted an application for the position. Miami hired a male, Chris Derrington, to fill the position. Plaintiff filed a second charge with the EEOC, claiming discrimination against her with respect to her application for the MCIC position. Plaintiff filed an amended complaint in this lawsuit on August 29, 2006, adding claims based on that charge.

## II.  Plaintiff's claims

Plaintiff brought a total of ten claims against defendants under state and federal law. The parties subsequently stipulated to the dismissal without prejudice as to all defendants of Counts III, IV, V, VI, IX and X of the Amended Complaint. Doc. 29. In addition, the parties stipulated to the dismissal with prejudice of Counts II, VII and VIII of the Amended Complaint as to the individual defendants only. The following claims therefore remain:

- **Count I**: A claim under 42 U.S.C. § 1983 against all defendants, claiming that they deprived plaintiff of her property, under color of state law, in retaliation for her exercise of her First Amendment free speech rights, in violation of her rights under the First and Fifth Amendments to the United States Constitution and the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

3

- **Count II**: A claim against Miami for gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, claiming that plaintiff was qualified for the position of Director of the Page Center and defendants failed to renew her contract for the Directorship on account of her gender.

- **Count VII**: A claim against Miami for gender discrimination under Title VII, claiming that plaintiff was qualified for the position of Director of the MCIC and that defendant failed to hire her on account of her gender.

- **Count VIII**: A claim for retaliation against Miami under Title VII, claiming that plaintiff complained to defendant and filed a charge with the EEOC regarding the discriminatory treatment she was experiencing, and defendant retaliated against her after she engaged in protected activity, including, but not limited to, by failing to hire her as Director of the MCIC.

Plaintiff alleges in her opposing memorandum that it was defendants' goal to have one person as Director of the Page Center and the Cintas Chair, a professor position in Miami's Business School; because there was no suitable candidate for the combined position, it was split into two jobs; shortly after plaintiff began her employment, defendants found a male, Jay Kayne, to fill the Cintas Chair, and undertook a successful campaign to push plaintiff from her job; and when plaintiff applied for a new position as MCIC Director, Miami refused to hire her in retaliation for her filing this lawsuit alleging discrimination in the termination of her job as Director of the Page Center.

As relief, plaintiff requests that defendants be enjoined from further unlawful conduct; that she be reinstated to employment with Miami; that she be awarded all lost pay and benefits, compensatory damages, punitive damages, and pre-judgment interest; and that she be awarded reasonable attorney fees and costs and all other legal and equitable relief to which she may be entitled.

### III. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***Id***. (citing ***Cities Serv.***, 391 U.S. at 288-289, 88 S.Ct. at 1592). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." ***Id***. at 251-52. If the evidence is merely colorable, ***Id***. (citing ***Dombrowski v. Eastland***, 387 U.S. 82, 84 (1967)), or is not significantly probative, ***Id***. (citing ***Cities Serv.***, 391 U.S. at 290), judgment may be granted.

## IV. Miami University's Motion for Summary Judgment

### A. Gender discrimination claims

A plaintiff claiming discrimination under Title VII must introduce either direct or circumstantial evidence that the defendant took an adverse job action against her because of her gender. ***Manzer v. Diamond Shamrock Chemicals Co.,*** 29 F.3d 1078, 1081 (6th Cir. 1994). Direct evidence in a discrimination case is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." ***Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,*** 176 F.3d 921, 926 (6th Cir. 1999). If plaintiff presents direct evidence of discrimination, the ***McDonnell-Burdine*** paradigm is of no consequence. ***Kline v. TVA,*** 128 F.3d 347, 349 (6th Cir. 1997). If direct evidence of discrimination is lacking, plaintiff must prove a prima facie case of discrimination.

Plaintiff may establish a prima facie case of gender discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost or not gained; and 4) the position was filled by someone outside of the protected class. ***Id.***

Plaintiff may also establish the fourth prong of a prima facie case by showing that she was treated less favorably than a similarly-situated employee outside of her protected class. ***Clayton v. Meijer, Inc.,*** 281 F.3d 605, 610 (6th Cir. 2002). In such a case, plaintiff must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. ***Ercegovich v. Goodyear Tire & Rubber Co.,*** 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must

6

have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* at 352 (quoting *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992)); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000).

The Sixth Circuit has noted that "*Mitchell* itself only relied on those factors relevant to the factual context in which the *Mitchell* case arose-an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment." *McMillan v. Castro*, 405 F.3d 405, 413 (6th Cir. 2005) (citing *Ercegovich,* 154 F.3d at 352). The *McMillan* court clarified that the specific factors addressed in *Mitchell* "generally are all relevant in cases alleging differential disciplinary action," but courts should not assume that the specific factors discussed in *Mitchell* are relevant in cases arising under different circumstances. *Id*. Rather, in such cases, courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id*. at 414; *see also Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 479-80 (6th Cir. 2003).

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. *Mitchell,* 964 F.2d at 582-84. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the employer carries its burden, the plaintiff must prove by a preponderance of the legal evidence that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Plaintiff has the ultimate burden of proving that gender was a determining factor in the

7

adverse employment decision. *Chappell v. GTE Products Corp.,* 803 F.2d 261, 265 (6th Cir. 1986).

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the decision; or 3) the reasons were insufficient to warrant the action. *Manzer,* 29 F.3d at 1084. The first type of showing consists of evidence that the reason offered for the adverse action never happened, i.e., that the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not subjected to the same action even though they engaged in conduct substantially identical to that which purportedly motivated the action taken against the plaintiff. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.*

For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate the adverse action, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

Although the Court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. *Wexler v. White's Furniture, Inc*., 317 F.3d 564, 576 (6th Cir. 2003) (citing *E.E.O.C. v. Yenkin-Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir. 1997)). The Court in *Wexler* addressed the extent to which a

8

fact-finder may consider the reasonableness of an employer's decision:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. ***Smith v. Chrysler Corp.***, 155 F.3d 799, 807 (6th Cir.1998)) (holding that in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); ***In re Lewis***, 845 F.2d 624, 633 (6th Cir.1988) ('Sears does not have to establish that the basis on which it acted in firing Lewis was *sound;* rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.') (emphasis in original) (internal quotation marks omitted).

Miami alleges that all actions taken with respect to plaintiff's employment were based on its evaluation of her employment. Miami claims that it terminated plaintiff because of her lack of progress in developing the strategic plan she was hired to formulate and because it received reports that she had acted unprofessionally in her communications with alumni, advisory board members and Miami faculty. Miami also claims that Derrington was selected over plaintiff for the position of MCIC Director based on his superior qualifications.

Plaintiff claims that she was treated differently than a similarly-situated employee, Kayne. Plaintiff contends that both she and Kayne worked in the Page Center, they both reported to Dr. Jenkins, and they both were supposed to be engaged in a collaborative effort to develop a strategic plan. Plaintiff claims that Kayne was at fault for discontent in the Page Center but that only she was terminated for not team-building. As to the MCIC Director position, plaintiff asserts that the evidence shows that she was qualified for the position, she was denied the position, and a male was chosen for the position.

Plaintiff also claims that she has established a genuine issue of fact as to pretext. With

regard to the decision to not renew her contract, plaintiff contends that although Dr. Jenkins and Dr. Speh alleged as the basis for the decision her failure to make progress on the strategic plan for the Page Center and issues with professionalism, she was given a year to complete the plan and the decision to terminate her was made only six months after she began her employment. Plaintiff also claims that a jury could consider comments by Dr. Jenkins, including comments that her aggressiveness was a problem, as evidence of gender discrimination.  She claims that she has established a genuine issue of fact as to the veracity of the articulated reason for Miami's decision to award the MCIC position to Derrington by introducing evidence that she was the more qualified candidate.

In reply, Miami disputes that plaintiff has established a prima facie case of discrimination.  Miami alleges that plaintiff was not replaced by Kayne, but instead he took on her duties in addition to his full-time teaching responsibilities.  **See Barnes v. GenCorp Inc.,** 896 F.2d 1457, 1465 (6th Cir. 1990) (an employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to his other duties or when the plaintiff's work is redistributed among existing employees performing related work).  Miami also claims that Kayne was not similarly-situated to plaintiff.  In addition, Miami challenges much of the evidence offered by plaintiff as incompetent and hearsay.  Miami also invokes the same actor inference, which allows the fact-finder to infer a lack of discrimination from the fact that the same individual hired and fired the plaintiff.  **See Buhrmaster v. Overnite Transportation Co.**, 61 F.3d 461, 464 (6th Cir. 1995).

Upon a review of the record, the Court finds that there are genuine issues of material fact as to plaintiff's gender discrimination claims based on both Miami's decision to not renew her

10

contract and to not hire her for the MCIC position. With regard to the decision to not renew plaintiff's contract, there are questions of fact as to whether plaintiff was replaced by Kayne; whether she and Kayne can be considered to have been similarly-situated given that they both were purportedly assigned to work on the strategic plan and they both reported to Dr. Jenkins; and whether she and Kayne were treated differently. As to that decision and the decision to not hire plaintiff for the MCIC Director position, there are questions of fact as to whether the reasons given were pretextual and whether the real reason for the decisions was her gender. Accordingly, Miami is not entitled to summary judgment on plaintiff's gender discrimination claims.

### B. Title VII retaliation claim

Plaintiff claims that she has established a genuine issue as to whether Miami retaliated against her in violation of Title VII, 42 U.S.C. § 2000e-3(a), for complaining of discrimination when it refused to hire her as the Director of the MCIC.

Section 2000e-3(a) provides,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in activity protected under the statute; (2) the exercise of her civil rights was known by defendant; (3) defendant thereafter took a materially adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. ***Nguyen v. City of***

*Cleveland,* 229 F.3d 559, 563 (6th Cir. 2007). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id*.

Once plaintiff establishes a prima facie case of retaliation, the burden is on the defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir. 1986).

Plaintiff claims that she has established direct evidence of retaliation in the form of comments by Gilbert Pacey, who was part of the search committee for the MCIC Director position. Plaintiff claims that Pacey informed her that he had been told to open up the search process again to bring in other candidates to interview because there were people who did not want plaintiff to be interviewed, and when she asked Pacey if that was because of her lawsuit, he answered, "Well, I'm sure that's the reason." Doc. 47, Plaintiff's depo., pp. 183-84. Plaintiff claims if a jury believed such evidence, it must find Miami retaliated against her.

Plaintiff also alleges that she can establish a prima facie case of retaliation with circumstantial evidence. Plaintiff contends that there are disputed issues of material fact as to whether there was a causal connection between her filing of this lawsuit and Miami's refusal to hire her for the MCIC position. In this regard, she alleges that Miami cannot rely on its articulated reason for the adverse action (that plaintiff was less qualified than the chosen candidate) to argue that she has not met the causal connection prong of the prima facie case. *See Gribcheck v. Runyon,* 245 F.3d 547, 551 (6th Cir. 2001) (Sixth Circuit found that by looking to the incident leading to the plaintiff's termination in examining whether the causal connection prong of a prima facie case was satisfied, the district court "jumped ahead in the *McDonnell*

12

*Douglas* framework.")

Plaintiff also claims that she has created an issue of fact as to whether she was more qualified for the MCIC Director position than the male who secured it, Derrington. She further argues that Pacey's comment and the short period of time between her filing of this suit in February 2005 and the posting of the MCIC Director position in March 2005 is sufficient to establish a causal connection.

In addition, plaintiff claims that she has established a genuine issue as to whether Miami's articulated reason for its hiring decision was a pretext for discrimination. She contends that she has shown there is a genuine issue as to whether the articulated reason - that she was not as qualified as the chosen candidate - has any basis in fact. Plaintiff also contends that Miami offers no evidence to establish that its articulated reason was not a pretext for discrimination. Plaintiff alleges that, on the other hand, she has offered abundant evidence to show that she was the more qualified candidate, including evidence that Kayne testified that plaintiff had "incredible skills related to technology transfer;" Pacey reported the belief to the search committee that plaintiff was the top candidate for the position; and plaintiff contributed significant time and effort to the MCIC initiative before applying for the position and was therefore uniquely familiar with the program. Plaintiff alleges that a jury could examine such evidence, along with the fact that Miami terminated Derrington within months of his hiring, and determine that it was plaintiff's complaints about discrimination, and not Derrington's purportedly superior qualifications, that motivated Miami's refusal to hire her.

In reply, Miami contends that plaintiff's testimony concerning what Pacey allegedly told her is entitled to no more deference than allegations in a complaint. Miami also argues that the

13

relevant time frame is not the time between the filing of her original complaint and the posting of the MCIC Director position since the posting was not an adverse action. Rather, Miami contends that the relevant time frame is the time between the filing of plaintiff's complaint on February 17, 2005 and the date Derrington was hired, which was after August 3, 2005. Miami argues that the time frame does not support a causal connection in this case. In addition, Miami correctly notes that plaintiff has attempted to place the burden on defendant to establish that its articulated reasons for its actions are not a pretext for discrimination, which is improper. Finally, Miami argues that plaintiff has not presented evidence to show that its reason for hiring Derrington is a pretext for retaliation.

As an initial matter, the Court finds that plaintiff has failed to present direct evidence of discrimination on summary judgment. Pacey's alleged comment as testified to by plaintiff does not compel the conclusion that plaintiff's gender was the reason for Miami's failure to hire her because the comment can be construed as an assumption on Pacey's part as to why certain individuals did not want plaintiff to be interviewed for the position, rather than a representation on his part that he knew for a fact that certain individuals did not want her to be interviewed because she had filed this lawsuit. On the other hand, the circumstantial evidence presented by plaintiff is sufficient to raise a genuine issue of material fact as to the only disputed prong of plaintiff's prima facie case of retaliation, i.e., whether there was a causal connection between her protected activity and Miami's failure to hire her for the MCIC Director position, and as to pretext. Accordingly, Miami is not entitled to summary judgment on the Title VII retaliation claim.

### C. First Amendment retaliation claim

Plaintiff brings a claim against Miami under § 1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws."  Plaintiff alleges in her opposing memorandum that she can establish all the elements of a First Amendment retaliation claim against Miami under § 1983.  First, plaintiff alleges that she engaged in constitutionally protected activity by filing suit against Miami.  Second, plaintiff alleges that Miami subjected her to an adverse action by denying her the position of MCIC Director after she filed this suit.  Third, plaintiff contends that there is a genuine issue of fact as to a causal connection between her filing of the suit and the adverse action based on evidence that she was allegedly more qualified for the position than the individual who was hired.  Plaintiff claims that Miami is liable for injunctive relief because no Eleventh Amendment immunity is available when injunctive relief is prayed for.  She cites **Barton v. Summers,** 293 F.3d 944, 949 (6th Cir. 2002), in support of her position.

Miami contends that as a state institution of higher learning, it is immune from suit under the Eleventh Amendment whether the relief sought is money damages or injunctive relief.  As to the merits of plaintiff's claim, Miami alleges that its decision to not offer her the position of MCIC Director was unrelated to any protected activity on her part, but rather was based on the fact that the search committee found a better qualified candidate.

Miami's claim of Eleventh Amendment immunity is well-taken.  As a public university, Miami is an arm of the State of Ohio and is immune from suit for any type of relief under § 1983.  *See* Ohio Rev. Code § 3345.011; **Hall v. Medical College of Ohio at Toledo***,* 742 F.2d

15

299 (6th Cir. 1984). In arguing that Miami can be sued for injunctive relief, plaintiff has misconstrued **Barton**. **Barton** sets forth the three generally recognized exceptions to the rule that states are immune from private suit under the Eleventh Amendment. These are: (1) a state may consent to suit; (2) Congress may, pursuant to its powers under the Fourteenth Amendment, abrogate the state's immunity; and (3) a federal court may issue an injunction ordering prospective relief against a state *official* in order to prevent future constitutional violations. **Barton**, 293 F.3d at 948. **Barton** does not indicate that a state, as opposed to a state official, can be sued for prospective injunctive relief. In fact, the Sixth Circuit has unequivocally stated that the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." ***See Thiokol Corp. v. Dept. of Treas.,*** 987 F.2d 376, 381 (6th Cir. 1993). Thus, Miami is entitled to summary judgment on the § 1983 claim.

### V. The Individual Defendants' Motion for Summary Judgment

Plaintiff claims a violation of her First Amendment rights by the individual defendants based on the alleged termination of her employment in purported retaliation for her reports of missing purchase orders and her inquiries as to the possible misuse of funds. Defendants argue that plaintiff cannot establish a First Amendment claim because she did not engage in the speech she alleges; even if she did so, defendants' actions are unrelated to that speech; and plaintiff's speech is not protected by the First Amendment because it was pursuant to her official duties. Defendants further argue that plaintiff cannot show that they deprived her of any property. They claim that because their conduct did not violate any of plaintiff's constitutional rights and their actions towards plaintiff were reasonable and lawful, they are entitled to qualified immunity.

Government officials performing discretionary functions are generally immune from

16

liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). That is, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)). Whether a defendant is entitled to qualified immunity is a question to be resolved at the earliest possible stage of the litigation. *Saucier v. Katz,* 533 U.S. 194, 200 (2001). Resolving the issue requires a two-part analysis: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" (2) If a violation could be made out on a favorable view of the parties' submissions, was the right clearly established? *Id.* at 201. The burden is on the plaintiff to allege and prove that the defendant violated a clearly established right. *See Tucker v. Callahan,* 867 F.2d 909, 913, n.3 (6th Cir. 1989).

A public employee who seeks to establish a First Amendment violation based on her discharge from employment must demonstrate that her speech was constitutionally protected and that such speech was a substantial or motivating factor in her discharge. *Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir. 1999) (citing *Bd. of County Commissioners, Wabaunsee County, Kansas v. Umbehr,* 518 U.S. 668, 675 (1996)). If the employee establishes a violation, the government can avoid liability "by showing that it would have taken the same action even in the absence of the protected conduct." *Id.*

17

In determining whether speech is constitutionally protected, the court must first determine whether the plaintiff's speech may be fairly characterized as constituting speech on a matter of public concern. ***Rahn v. Drake Center, Inc.,*** 31 F.3d 407, 411 (6th Cir. 1994). Whether speech addresses a matter of public concern is a question of law. ***Id.*** A matter of public concern generally involves a matter of political, social, or other concern to the community. ***Leighton,*** 168 F.3d at 909 (citing ***Connick v. Myers,*** 461 U.S. 138, 146 (1983)). The Supreme Court recently defined the scope of First Amendment protection for speech of public employees in ***Garcetti v. Ceballos***, 126 S.Ct. 1951 (2006). The Supreme Court held in ***Garcetti*** that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." ***Id.*** at 1960.

In claiming that her speech is protected, plaintiff seeks to distinguish ***Garcetti*** from the current case on the following grounds:

- The Supreme Court noted that the restrictions the government imposes "must be directed at speech that has some potential to affect the entity's operations," and the individual defendants cannot claim "negative" impact on Miami's operations from plaintiff's speech.
- The speech in this case was not intended to be punishable since the Supreme Court focused on granting supervisors power to ensure employees' official communications "are accurate, demonstrate sound judgment, and promote the employer's mission" (126 S.Ct. at 1961), whereas in this case defendants have not raised any issue with the accuracy of plaintiff's decisions regarding reporting theft, and the soundness of her judgment or the impact of her decision on Miami's mission has not been called into question.
- The Supreme Court did not provide a framework for defining the scope of an employee's duties in cases where there is room for serious debate. 126 S.Ct. at 1961.
- The Supreme Court distinguished between contributions to civic discourse and haphazard or harmful job performance, and plaintiff's speech clearly falls within the former category.

18

In addition to claiming that she engaged in protected speech, plaintiff alleges that there is evidence that defendants took an adverse action against her by depriving her of a property interest in continued employment in which she had a legitimate expectation based on conversations she had with defendants and assumptions that her position was to be ongoing. Plaintiff contends there is a question as to whether she was actually terminated for poor performance as alleged by defendants. Finally, plaintiff alleges that defendants are not entitled to qualified immunity because she has established a genuine issue as to whether they violated her constitutional rights and whether it was clear to a reasonable official that terminating an employee for raising concerns about mismanagement of funds and theft of equipment at a public university was unlawful.

While there may be a question of fact as to whether plaintiff engaged in the speech in question, the factual issue is not material. Assuming plaintiff did engage in the speech, defendants are entitled to qualified immunity on her First Amendment claim. Plaintiff has conceded that the Page Center's equipment or purchase orders would have been the concern of the Director of the Page Center by acknowledging at her deposition "fiduciary responsibility as a Director of a unit in a public university, it's my responsibility to report when purchase orders have been stolen and signatures have been forged and equipment is missing." Plaintiff's depo., p. 84. Accordingly, plaintiff's speech on such matters was pursuant to her official duties. In view of the holding in *Garcetti*, it was not clearly established at the time plaintiff engaged in the speech that such speech was entitled to First Amendment protection as speech on a matter of public concern.

19

Even if plaintiff's speech were protected, her First Amendment claim must still fail because she has produced no evidence of a causal connection between her speech and any adverse job action. For these reasons, the individual defendants are entitled to summary judgment on plaintiff's First Amendment claim.

Plaintiff indicated at oral argument that she is not pursuing independent claims for due process and equal protection violations. Rather, she alleges a deprivation of a property interest only in connection with her First Amendment claim. Accordingly, the Court need not address whether plaintiff has come forward with sufficient evidence to withstand summary judgment as to these claims.

## VI. Conclusion

In accordance with the foregoing, defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to plaintiff's First Amendment claims against all defendants. Defendants Jenkins, Speh and Crutcher are **DISMISSED** from the lawsuit. The motion is **DENIED** as to plaintiff's Title VII claims against Miami for gender discrimination and retaliation. The case will proceed to trial against Miami on these claims pursuant to the schedule established by the Court.

**IT IS SO ORDERED.**

                                                     S/ Herman J. Weber
                                                     HERMAN J. WEBER, SENIOR JUDGE
                                                      UNITED STATES DISTRICT COURT